## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CINDI FELDWISCH,

       *Plaintiff*,

       v.                                    Case No. 2:22-cv-11645

CHRISTINE WORMUTH,                        District Judge
Secretary of the United States            Gershwin A. Drain
Department of the Army

       *Defendant*.
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#18]

This matter is before the Court on a Motion for Summary Judgment filed by Christine Wormuth ("Defendant") on behalf of the United States Army and against Cindi Feldwisch ("Plaintiff"). ECF No. 18. Defendant filed this Motion on June 30, 2023, arguing that Plaintiff's sex and age discrimination allegations fail to state a claim. *Id.* The Court heard argument from the parties on October 24, 2023. For the reasons stated herein, Defendant's Motion is granted in part.

## I.    BACKGROUND

Plaintiff is a former Lieutenant Colonel of the United States Air Force and was between 61 and 62 years old at the time of these events. ECF No. 12, PageID.74. She alleges that between sometime in 2018 and April 29, 2019, she applied for

civilian employment at the Army's Combat Capabilities Development Command ("CCDC"), Ground Vehicles System Center ("GVSC") as its Chief of Protocol G3. *Id.* Though the position was vacant for the 20 months preceding her employment, she was never interviewed for the job. *Id.* at PageID.75. Instead, Plaintiff received a call in early 2019 from R. Craig Effinger, the GVSC Chief of Staff, who asked if Plaintiff remained interested in the open position. *Id.* Plaintiff confirmed and began work on April 29, 2019. *Id.*

According to Plaintiff, she recognized almost immediately that leadership at the GVSC was biased against her because of the institution's culture of disrespect, harassment, and hostility toward women and older individuals. *Id.* She states that shortly after completing new hire orientation, she attended a conference with GVSC leadership. *Id.* The conference included Effinger, Frank Wilson, who is the Assistant Chief of Staff of the CCDC, and Jennifer Davis from human resources. *Id.* Plaintiff asserts that Effinger disrespected and unjustifiably criticized Jennifer Walsh, who had administered much of Plaintiff's orientation, "based on her sex and because she is an older woman" and that Wilson and Davis did nothing in opposition to Effinger's behavior. *Id.* at PageID.77. Witnessing this, Plaintiff complained to Effinger, Wilson, Davis, and others to oppose Walsh's treatment. *Id.* These complaints, she asserts, "precipitated a pattern of mistreatment [] and disrespect" from Effinger and Wilson. *Id.*

Plaintiff alleges that her mistreatment continued throughout her time at the GVSC, especially from Wilson. *Id.* She states that at various points, Wilson became unjustifiably angry and yelled at her in front of others. *Id.* at PageID.78. He also required Plaintiff to work extra hours without overtime pay or paid time off work. *Id.* Plaintiff claims that Wilson would grant requests for paid time off for himself and for male and younger employees.

On September 17, 2019, Walsh filed a complaint of discrimination and harassment  against Effinger, Wilson, and Davis under the Civil Harassment Intervention Program ("CHIP"). *Id.* at PageID.79. Plaintiff was called into a meeting with Wilson and Davis eight days later, on September 25, during which Davis stated, "Maybe you do not have the bandwidth to perform your job." *Id.* at PageID.80. Plaintiff states that she had not been informed that her performance was deficient in the five months prior to this meeting and that neither Wilson nor Davis offered to provide supplemental training. *Id.* at PageID.79, PageID.81.

Plaintiff asserts that the September 25 meeting caused her so much mental and emotional distress that she sought medical attention to address the disabling symptoms she was experiencing. *Id.* at PageID.82. On a doctor's recommendation, Plaintiff took medical leave from her responsibilities at GVSC. *Id.* On October 1, 2019, while on leave, she filed a CHIP complaint for gender and age discrimination against Effinger, Wilson, Davis, and others because of discrimination evidenced by

the September 25 meeting, other instances of mistreatment, and the overall work culture of discrimination. *Id.* Plaintiff states that on October 2, 2019, she received an email from Wilson reminding her that she was still on the probationary period of her employment. *Id.* at PageID.83.

Plaintiff was interviewed about Walsh's CHIP complaint on October 9, 2019. *Id.* She supported Walsh's allegations against Effinger, Wilson, and Davis in the interview and opposed the discriminatory mistreatment Walsh had experienced. *Id.* Plaintiff was terminated nine days later on October 18. *Id.* at PageID.84. She filed her Amended Complaint against Defendant on November 22, 2022, claiming that the Army, through Plaintiff's supervisors, unlawfully discriminated and retaliated against her based on age and gender in violation of the ADEA and Title VII. ECF No. 1. The Court now considers Defendant's Motion for Summary Judgment, as it maintains that Plaintiff cannot make a prima facie case of discrimination or, alternatively, cannot show that the stated reasons for her termination were pretextual. ECF No. 18.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Simms v. Bayer Heathcare LLC (In re Bayer Heathcare)*, 752 F.3d 1065, 1075 (6th Cir. 2014) (quoting *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Thus, summary judgment should be granted when there is no genuine dispute of

material fact, and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56 (a). In ruling on a motion for summary judgment, a district court must

consider the whole record and "view all evidence in the light most favorable to the

nonmoving party." *Tennial v. UPS*, 840 F.3d 292, 301 (6th Cir. 2016).

### III.   ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination

on the basis of race, color, religion, sex, or national origin. 42 U.S.C.S § 2000e-

2(a)(1). Similarly, the Age Discrimination in Employment Act of 1967 prohibits

discrimination in employment on the basis of age. 29 U.S.C.S. § 623(a)(1). Both

statutes also make it unlawful to retaliate against an employee who opposes a

prohibited employment practice. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). When

assessing claims of employment discrimination under either statute, district courts

first look for direct evidence of discrimination. *Gulley v. Cty. of Oakland*, 496 F.

App'x 603, 607 (6th Cir. 2012). Where no such evidence exists, a plaintiff must

present circumstantial evidence sufficient to permit an inference of discrimination.

*Id.*

### A.   PLAINTIFF'S INTENTIONAL DISCRIMINATION CLAIMS

Plaintiff relies on circumstantial evidence to support her sex and age

discrimination claims. To assess circumstantial evidence of discrimination under Title VII and the ADEA, courts apply the burden shifting framework adapted from *McDonnell Douglas*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). Under *McDonnell Douglas*, a plaintiff must show by a preponderance of the evidence that she (1) belonged to a protected class (i.e., was a woman or over 40 years of age); (2) suffered an adverse employment action; (3) was qualified for the position held when the adverse action was taken; and (4) was replaced by or treated less favorably than someone outside her protected class. *Owen v. GE Aviation*, No. 20-5177, 2021 U.S. App. LEXIS 24903, at *6 (6th Cir. Aug. 2, 2021). If Plaintiff successfully establishes a prima facie case, Defendant faces the burden of demonstrating a legitimate, nondiscriminatory reason for the adverse action. *Id.* Finally, if Defendant makes this showing, the burden shifts back to Plaintiff, who can show that Defendant's asserted reason is pretextual. *Id.* (citing *Romans v. Mich. Dep't. of Human Servs.*, 668 F.3d 826, 838 (6th Cir. 2012)).

### a. Plaintiff successfully makes a prima facie case of discrimination under Title VII and the ADEA.

Plaintiff alleges in her Amended Complaint that she is a woman in her mid-sixties who was terminated from a position she was qualified for and then replaced by a man who is more than fifteen years younger than she is. ECF No. 12, PageID.74, 78, 84; ECF No. 20, PageID.360–374. Defendant does not challenge three of these considerations: (1) that Plaintiff was a member of a protected class during the

relevant time, (2) that she suffered an adverse employment action when her employment was terminated, or (4) that she was replaced by an individual not in her protected class. Instead, Defendant challenges the third factor by arguing that Plaintiff was not qualified for the Chief of Protocol G3 position at the time of her termination. ECF No. 18, PageID.145.

A plaintiff in a discriminatory 'failure to hire' case demonstrates that she was qualified for a position by showing that she met the position's "objective qualifications." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (cleaned up). But to prove that she was qualified for a position already held, a plaintiff must show that she "was meeting her employer's legitimate expectations and was performing to her employer's satisfaction." *Most v. BWXT Nuclear Operations Grp., Inc.*, 743 F. App'x 664, 668 (6th Cir. 2018) (noting that this standard applies to ADA, ADEA, and Title VII cases). When determining whether a plaintiff was meeting her employer's legitimate expectations, "a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as a reason for terminating the plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–661 (6th Cir. 2000). Otherwise, the Court would risk "improperly conflating the distinct stages of the *McDonnell Douglas* inquiry. *Id.* at 661.

There is sufficient evidence to show that Plaintiff met her employer's

legitimate expectations and was performing to her employer's satisfaction throughout her employment. Plaintiff testified in her deposition that in June of 2019, two months after starting the role, she received a "40-hour time off award" for "superior performance in executing [her] duties." ECF No. 18-6, PageID.219 (22:3–20). She received this recognition because there had been "several back-to-back conferences and many catered events" in that short time. *Id.* at 22:10-15. This testimony is supported by Plaintiff's July 16, 2019 midpoint review, in which she received almost exclusively positive remarks. In fact, Plaintiff's supervisor evaluations for her problem-solving, teamwork, customer relations, and communication attributes stated that she was:

> **Problem Solving**: doing a fantastic job not just learning the organization, but also introducing efficient processes for managing DV visits . . . excellent at leveraging the entire G3 team.

> **Teamwork**: very good at including all stakeholders for visitors.

> **Customer Relations**: always customer oriented and focused. She did a fantastic job supporting Dr. Schihl's appointment ceremony. Ms. Feldwisch always put 100% effort into every visit ensuring leadership is able to focus on the purpose of the visit.

> **Communication**: Ms. Feldwisch communicates well with leadership, ensure [sic] prompt and efficient responses. Ms. Feldwisch is an expert in her field and ensures every visit is extended the appropriate amount of protocol. She educates the team and customers in all aspects of etiquette, customs and courtesies.

ECF No. 18-13, PageID.270–274. Plaintiff received additional reviews that are

neutral at worst, and none suggest that she was making significant errors. *Id.*
("Continue to work on relationships in the front office"; "continue to communicate
with the front office about upcoming visits"; "continue to work toward completion
[of training].").

Plaintiff has also shown that she was meeting expectations shortly before she
was terminated. She argues that on September 23 and 24 of 2019, less than a month
before her employment ended, GVSC hosted a "Deep Dive" event "for which Ms.
Feldwisch had to assume protocol related responsibilities . . ." ECF No. 20,
PageID.366. During this event, she "commenced work no later than 6:00 a.m. and
she worked 11 to 12 hours on each of these days to successfully facilitate the event."
*Id.* As Plaintiff was exhausted once the event was over, she "felt compelled to leave
work earlier than normal that day to recover." *Id.*[1] Plaintiff was reprimanded by
Wilson for leaving work early even though she left "[a]fter completing various tasks
associated with the closure of the event[.]" *Id.* She was also publicly recognized for
her work on the Deep Dive event and thanked for her excellent job performance by
the Director of GVSC. *Id.* at PageID.367. Further, Plaintiff received an award from

---

[1] The parties dispute whether the event was over when Plaintiff attempted to leave
work early. *See* ECF No.18, PageID.141 ("The deep dive event was not completed
when Feldwisch left."); ECF No. 20, PageID.382 ("Wilson falsely accused Ms.
Feldwisch during the meeting of abandoning the "Deep Dive" event before it had
concluded on September 24, 2019, although this had not occurred and Mr. Wilson
otherwise had approved her request to use sick time to recover from exhaustion and
sickness she had experienced[.]").

a Brigadier General who participated in the "Deep Dive" event, as he also recognized her performance. *Id.*

The above is more than enough to show that Plaintiff was qualified for purposes of a prima facie case. And Defendant's argument in opposition is improperly based on her lack of "on paper" qualifications. ECF No. 18, PageID.145–146 (citing 'failure to hire' caselaw). Defendant argues that Plaintiff did not have the necessary specialized experience on her resume, had never held a protocol officer position, and had never done an event using Official Representation Funds. *Id.* at PageID.146. These facts may demonstrate that Plaintiff should not have been hired, but they do not show that she was not meeting legitimate expectations at the time she was terminated. *Cf. Most*, 743 F. App'x at 668 ("Most only argues that he was qualified on paper, which, if anything, demonstrates why he was hired for the position, rather than how his performance was to BWXT's satisfaction. He makes no argument as to how he was performing to BWXT's expectations.").

Defendant's other evidence of qualifications is that Plaintiff had not yet finished her mandatory training and had received complaints about her preparation and work style from coworkers. ECF No. 18, PageID.140–141. There is no argument, however, as to how this evidence shows that Plaintiff was not living up to what was expected of her at the time. And Plaintiff's evidence at least rebuts each of these contentions, other than whether she completed her training. As Defendant

offers nothing else to show that Plaintiff was unqualified, the Court finds that this factor of the prima facie case has been satisfied. Accordingly, Plaintiff has successfully made a prima facie case of employment discrimination under Title VII and the ADEA.

> **b. Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination.**

As Plaintiff has established a prima facie case, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. Defendant's reason "must be clear and reasonably specific and supported by admissible evidence which would allow the trier of fact to rationally conclude that the employment decision was not motivated by discriminatory animus." *Russell v. Three Pillars*, No. 21-1481, 2022 U.S. App. LEXIS 3565, at *7 (6th Cir. Feb. 7, 2022) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257, 101 S. Ct. 1089, 1096 (1981)).

According to Defendant, Plaintiff's employment was subject to a federally regulated probationary period. ECF No. 18, PageID.147 (citing 5 C.F.R. § 315.803(a)). Under these regulations, Defendant was permitted to "terminate [Plaintiff's] services during this period if the employee fails to demonstrate fully [her] qualifications for continued employment." *Id.* Human Resources Specialist Chris Hervey testified to as much in a sworn declaration. ECF No. 18-16. According to Hervey, Plaintiff's probationary status meant that she "was in an assessment

period" during which she  was "observed to assess fitness for continued federal employment." *Id.* at PageID.286. As such, Hervey testified that Wilson was within his right to terminate Plaintiff upon "an affirmative decision regarding [her] fitness for continued employment." *Id.*

Defendant states that in assessing Plaintiff's fitness, "Wilson identified numerous issues with Feldwisch's performance that led him to conclude she could not meet the demands of the position." ECF No. 18, PageID.148. Around the time of the Deep Dive event, Wilson had been having "regular discussions with Feldwisch about her performance issues and had started meeting with her once a week." ECF No. 18, PageID.141. Some of these issues were that Plaintiff "did not understand basic protocol . . . was not prepared for morning meetings . . . was unprepared for visits from distinguished visitors and other people had to step in to fulfill her duties." *Id.* at PageID.140.

Because Wilson believed that Plaintiff was not improving her performance after the Deep Dive event, he reached out to Hervey about her struggles. *Id.* at PageID.141. Hervey instructed Wilson to document Plaintiff's performance issues, which he had not done despite the weekly meetings. *Id.* Defendant identifies a September 24, 2019 email between Wilson and Hervey that the two drafted to inform Plaintiff of the mounting concerns regarding her performance. ECF No. 18-17, PageID.288. In the email, Wilson states that "[t]he expectation of the Protocol

12

Officer is to see an event all the way to completion. It is unacceptable to abandon an event while it [is] still going on." *Id.* He continues, "I am concerned you are demonstrating a lack of progress toward developing the necessary competencies required for this position." *Id.* Wilson sent an edited version of this email to Plaintiff on October 2, 2019 with an added list of her expected competencies. ECF No. 18-21, PageID.300.[2] Plaintiff was terminated later that month. ECF No. 18-24.

As other evidence of performance issues, Wilson testified in his deposition that after the Deep Dive event, between September 25, 2019 and her eventual termination, Plaintiff "stopped communicating with [Wilson], she stopped letting [him] know what she was working on, and there were a couple instances where she deleted things from emails from our customers." ECF No. 18-2, PageID.197 (141:10–18). This evidence stands to show that Plaintiff's performance was poor shortly before her termination and after she had been instructed on what was

---

[2] Defendant also directs the Court to Plaintiff's Salary Appraisal Document, which is a 6-month review spanning from April 19 to September 19, 2019. ECF No. 18-23. Like Plaintiff's midpoint review, the salary appraisal includes supervisor assessments of Plaintiff's problem solving, teamwork, customer relations, leadership, communications, and resource management abilities. *Id.* at PageID.304–305. Unlike the midpoint review, however, Plaintiff's assessments are overwhelmingly negative and outline only areas where Plaintiff needs to improve. Defendant contends that this document shows that Plaintiff was terminated because of her poor performance. However, it was not completed and signed by Effinger and Wilson until January 9, 2020, nearly three months after Plaintiff was terminated. *Id.* at PageID.303. It is dubious that Wilson's assessment in this document properly reflects Plaintiff's aptitude at the time of her termination.

expected of her.

As "poor performance is a legitimate, non-discriminatory reason for an adverse employment decision," Defendant has satisfied its burden. *Russell v. Three Pillars*, No. 21-1481, 2022 U.S. App. LEXIS 3565, at *8 (6th Cir. Feb. 7, 2022). Plaintiff's termination letter outlines several reasons for her firing, including that she could not satisfy core functions of the role, did not understand her responsibilities, and was repeatedly insubordinate. ECF No. 18-24, PageID.310–311. Defendants proffered reason is clear and reasonably specific, and it could lead a jury to rationally find that Plaintiff's termination was not motivated by discriminatory animus.

### c. A reasonable jury could reject Defendant's articulated reason as pretextual.

Lastly, as Defendant has made its required showing, the burden shifts to Plaintiff to demonstrate that the stated non-discriminatory reason is pretextual. Plaintiff can do this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Russell v. Three Pillars*, 2022 U.S. App. LEXIS 3565, at *9 (quoting *Burdine*, 450 U.S. at 256)). Indirect evidence of pretext is that which shows that the stated reason for Plaintiff's termination "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)). In other words, Plaintiff must

14

"produce sufficient evidence from which a jury could reasonably reject the employer's explanation for the adverse employment action." *Foltz v. FCA*, No. 18-13882, 2023 U.S. Dist. LEXIS 53995, at *16 (E.D. Mich. Mar. 29, 2023) (quoting *Dekarske v. Federal Express Corp.*, 294 F.R.D. 68, 81 (E.D. Mich. 2013)).

Upon review of the record, a jury could find that Plaintiff's termination has no basis in fact or was not the actual reason for her discharge. As much of Defendant's evidence of performance issues at the time of termination is inconclusive or properly contested, the evidence taken together "casts doubt on the defendant's asserted nondiscriminatory basis." *Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 U.S. App. LEXIS 2319, at *13 (6th Cir. Jan. 24, 2022) (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 465 (6th Cir. 2020)).

As discussed above, Plaintiff has produced evidence that her performance was satisfactory or better throughout her tenure. She received glowing reviews and awards from Wilson at the midpoint of her employment and received a performance award from other Army personnel shortly before she was terminated. Wilson's negative reviews found in the Salary Appraisal Document contradict this evidence, but the document was completed and signed three months after Plaintiff's discharge. *See supra* n.2; ECF No. 18-23, PageID.303–305. This timeline casts doubt that the reviews reflect Plaintiff's performance at the time of her termination.

Further, Wilson's poor reviews appear to recharacterize as negative Plaintiff's

attributes that Wilson previously characterized as positive. *Compare* ECF No. 18-13, PageID.270 ("Ms. Feldwisch is excellent at leveraging the entire G3 team . . .") *with* ECF No. 18-23, PageID.304 ("Cindi needs to learn how to leverage the G3 team rather than rely on them."); *compare* ECF No. 18-13, PageID.273 ("Ms. Feldwisch is an expert in her field and ensures every visit is extended the appropriate amount of protocol") *with* ECF No. 18-23, PageID.304 ("Cindi to needs to build competency in her duties as the protocol officer so she can become the lead . . . . Cindi needs to improve her protocol competencies, quality of work, and time management."). These inconsistencies suggest that Plaintiff's performance did not significantly decline, and they cast doubt that Defendant held an honest belief of its nondiscriminatory reason for termination. *Block v. Meharry Med. Coll.*, 723 F. App'x 273, 280 (6th Cir. 2018).

Next, the Court is directed to former coworker Heather Marie Wisham's Declaration. Wisham states that Plaintiff was unprepared for morning meetings "fairly often" and that she could be verbally abusive. ECF No. 18-15, PageID.278–279. However, Plaintiff's preparedness for meetings, or any individual instance when this occurred, was not included in any email listing reasons for her termination. It is also unclear whether Plaintiff's manner of communicating contributed to her termination, as Ms. Wisham testified that she did not report Plaintiff's verbal abuse to anyone. *Id.* at PageID.279. Another former coworker, Brian James Coats, stated

that Plaintiff exhibited poor time management, causing Wilson to devote excess time and resources to ensure the success of missions. ECF No. 18-15, PageID.282–283. It is unclear, however, if this occurred before, after, or during the Deep Dive event. Thus, the Court cannot determine that Coats' assessment reflects Plaintiff's performance at the time of her termination.

There is evidence that, on Hervey's instruction, Wilson sent an email to Hervey on October 9, 2019 that listed his complaints regarding Plaintiff's performance. ECF No. 20-2, PageID.519–520. Plaintiff argues in retort that she was never given a proper opportunity to correct these alleged deficiencies, which was also a Hervey recommendation. ECF No. 20, PageID.384. She argues that Wilson ignored Hervey's instruction to properly inform her "both verbally and in writing" of his expectations. *Id.* (citing ECF No. 18-16, PageID.286). To the extent she was informed, Plaintiff argues that her first notice of her poor performance was at the September 25 meeting. ECF No. 20, PageID.371. She then received a follow-up email from Wilson on October 2, 2019. ECF No. 18-21, PageID.300. She never received the October 9 email.

Plaintiff maintains further that none of the deficiencies in Wilson's October 9 laundry list of complaints, or any other reason given for her termination, occurred between the September 25 meeting and her ultimate termination three weeks later in mid-October. *Id.* Accordingly, she claims she had no opportunity to improve. This

position is supported by the fact that Plaintiff was on medical leave for much of the period after the September 25 meeting. ECF No. 20, PageID.383. And it is further bolstered by Hervey's testimony that he became aware of Wilson's complaints about Plaintiff "around the end of September/early October." ECF No. 18-16, PageID.286. Wilson testified in his deposition that Plaintiff's performance was deficient between the Deep Dive event and her termination, which tends toward Defendant's position. ECF No. 18-2, PageID.197 (141:10–16). But the only evidence to support this assertion is the October 9 email between Wilson and Hervey, sent weeks after the two had already begun contemplating Plaintiff's inadequacies. ECF No. 18-14, PageID.275.

Ultimately, there is evidence to support Defendant's argument that it had a non-discriminatory reason for Plaintiff's termination. But Plaintiff has produced sufficient evidence to allow a jury to reject the explanation as pretextual. As such, a reasonable jury could find that Plaintiff's termination was improperly motivated by discriminatory animus.

## B. PLAINTIFF'S RETALIATION CLAIMS

Plaintiff also brings claims for unlawful retaliation in violation of Title VII and the ADEA. ECF No. 12, PageID.87–89, 91–94. She asserts that her repeated complaints about age and gender discrimination in the workplace were protected activity for which she was improperly terminated. *Id.*; ECF No. 20, PageID.376. She

relies on circumstantial evidence to show that her protected opposition activity caused her termination.

When relying on circumstantial evidence to make a prima facie case of retaliation under Title VII and the ADEA, Plaintiff must show that she (1) engaged in activity protected by the statutes; (2) Defendant knew she engaged in the activity; (3) Defendant took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse action. *Clemons v. Metro. Gov't of Nashville & Davidson Cty.*, 664 F. App'x 544, 547 (6th Cir. 2016); *Bilski v. McCarthy*, 790 F. App'x 756, 763 (6th Cir. 2019)). Meeting this burden "is not onerous, but one easily met." *Id.* (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)). If Plaintiff successfully makes a prima facie case of retaliation, the *McDonnell Douglas* burden shifting framework applies. *Pierce v. GM LLC*, 716 F. App'x 515, 517 (6th Cir. 2017).

Reviewing Plaintiff's evidence in light of this standard, the Court finds that Plaintiff cannot show that she suffered unlawful retaliation in violation of Title VII or the ADEA.

### a.  Plaintiff does not make out a prima facie case of retaliation.

Defendant only challenges Plaintiff's prima facie case with respect to the second and fourth factors, arguing that she "cannot establish a prima facie case because she cannot show that Wilson was aware of her protected activity when he

sought her termination." ECF No. 18, PageID.156. As her remaining contentions go uncontested, Plaintiff has satisfied the other prima facie case factors.[3] Thus the Court considers only whether Plaintiff has shown that Defendant was aware of her protected activity when she was terminated.

### i. Only Plaintiff's October 1, 2019 CHIP complaint is protected conduct.

As a preliminary issue, the Court must identify Plaintiff's protected activity. An employee claiming retaliation is protected by Title VII and the ADEA if she (1) has opposed an employer's discriminatory conduct made unlawful by either statute or (2) has testified, assisted, or participated in an investigation, proceeding, or litigation under either statute. *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 357 (6th Cir. 2020); *Aldrich v. Rural Health Servs. Consortium*, 579 F. App'x 335, 337 (6th Cir. 2014). Opposition activity "need not be lodged with absolute formality, clarity, or precision . . . Rather the opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Warren v. Hollingsworth Mgmt. Servs., LLC*, No. 2:19-cv-13121, 2022 U.S. Dist. LEXIS 3257,

---

[3] Plaintiff successfully alleges in her Amended Complaint that she "engaged in activity protected by [the statutes] when she filed her CHIP complaint and participated in the investigation of Ms. Walsh's CHIP complaint . . ." ECF No. 12, PageID.88, 92. She also properly asserts an adverse employment action by alleging that she "was terminated without cause . . ." *Id.* at PageID.84.

at *41 (E.D. Mich. Jan. 6, 2022) (internal citations omitted) (quoting *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).

Defendant asserts that "the only arguable protected activity prior to her termination that Feldwisch can allege is her CHIP complaint . . ." ECF No. 18, PageID.156. It argues further that Plaintiff's "alleged comments at the September 25th meeting that 'the verbal abuse has to stop' and she asked Wilson for an apology [sic] are insufficient to constitute protected activity." *Id.* Finally, Defendant asserts that Plaintiff's ADEA retaliation claim must fail because she never claimed age discrimination in her CHIP complaint or to anyone else. *Id.*

Plaintiff believes that her protected activity included more than just her October 1, 2019 CHIP complaint. She asserts that Title VII and the ADEA also protect her from retaliation for (1) objecting to comments made about Walsh at the May 7, 2019 meeting with Effinger, Wilson, and Davis; (2) confronting Wilson on September 18, 2019 about discriminatory bullying and treating male staff better than female staff; (3) complaining of discrimination and demanding an apology during the September 25, 2019 meeting because she had been subjected to discrimination based on her age and sex by Wilson; (4) giving an interview in support of Walsh's CHIP Complaint on October 9, 2019. ECF No. 20, PageID.361–370.

Defendant is correct. Plaintiff does not provide sufficient (or even consistent)

evidence to show that she made most of the discrimination allegations she now claims. Contrary to her Response, there is no evidence in the record to show that Plaintiff complained of discrimination based on sex or age before she filed her CHIP complaint. Because Plaintiff does nothing to resolve the contradiction, the assertions in her brief cannot support a retaliation claim at summary judgment. *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 961 (6th Cir. 2007).

To start, Plaintiff fails to show that she opposed unlawful discrimination on May 7, 2019 when she objected to disparaging comments Effinger and Davis made about Walsh. ECF No. 20, PageID.377–378. In her deposition, Plaintiff testified that Effinger and Davis said "something to the point that [Walsh] wasn't competent." ECF No. 18-6, PageID.220 (25:1–2). Plaintiff continued to state that she "can't even get into specifics 'cause I don't recall. I just know they were not happy with her performance." *Id.* (25:3–5). Plaintiff does not testify that either Effinger or Davis commented on Walsh's sex or age. Further, Plaintiff does not testify that she alleged unlawful discrimination when she spoke up for Walsh. According to Plaintiff, she remarked that Walsh is "a stellar Army employee" and that Effinger and Davis should be treating her professionally rather than "doing nothing but trashing her." *Id.* at PageID.219. Plaintiff's comments do not constitute protected opposition activity under Title VII or the ADEA. Though her complaint did not need to be precise, it did need to "allege unlawful discrimination rather than general

unfairness." *Mumm*, 727 F. App'x at 112. Plaintiff's testimony reveals that on May 7, 2019, she opposed general unfairness at most.

Plaintiff also fails to show that her September 18, 2019 interaction with Wilson constitutes protected opposition activity. She argues in her Response that after she and Walsh were verbally accosted by Wilson, she complained to him that he did not treat male GVSC employees in the same manner. ECF No. 20, PageID.365. Yet, Defendant correctly points out that this account is contradicted by Plaintiff's CHIP complaint, where she claims to have only "told him to stop attacking us as we were working the issue." ECF No. 21, PageID.534 (citing ECF No. 20-1, PageID.415). She offers no other evidence that she previously made the accusation she now asserts. Plaintiff's self-contradictory accounts, without more, are insufficient to show opposition activity at summary judgment.

Similarly, Plaintiff cannot now claim that she opposed discrimination during the September 25 meeting, as she makes no such mention in the only fulsome account of the event. Today, Plaintiff argues in her Response that she "complained to Mr. Wilson and Ms. Davis during the [September 25] meeting that Mr. Wilson[] had subjected her to discrimination and a hostile work environment based on her age and sex . . ." ECF No. 20, PageID.368. But the actual evidence of this meeting comes from Plaintiff's CHIP complaint. There, she claims that all she said to Wilson and Davis was that "the verbal abuse has to stop" and that she deserved an apology

because she "had never been treated with such disrespect in [her] life." ECF No. 20-1, PageID.417. Again, Plaintiff's contradictory account is insufficient at summary judgment. And her mere claim of verbal abuse is not protected activity since it would not be "reasonably understood that [Plaintiff] was making a complaint of [sex or age] discrimination." *Mumm*, 727 F. App'x at 113.[4]

Lastly, Plaintiff asserts that her interview in support of Walsh's CHIP complaint constitutes protected activity. And generally, participating in a discrimination investigation would fall under the ADEA or Title VII. *See Stanley*, 808 F. App'x at 357. However, Walsh's complaint makes no claim that she was being discriminated against based on her age or her gender. ECF No. 18-22, PageID.301–302. Instead, she contests general unfair and abusive treatment by both men and women. Particularly, she complains about Effinger and Davis "because of their positions of power in the organization, their missteps that were witnessed by

---

[4] Defendant argues further in its Reply that Plaintiff admitted in her Declaration "that she did not complain of unfair treatment based on her age or gender . . . until she made her CHIP complaint." ECF No. 21, PageID.532. This argument is misplaced. Plaintiff was asked whether she informed anyone in her chain of command that she felt she was being discriminated against and "admits," at most, that she only spoke with human resources about her CHIP complaint. ECF No. 18-27, PageID.334, 336. Though Defendant is correct that "[a] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement," Plaintiff's prior statement is not so clear as to constitute a contradiction. ECF No. 21, PageID.534 (quoting *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).

others, and the perceived opportunities for me that mysteriously dried up since those missteps." *Id.* Nothing in Walsh's complaint implicates Title VII or the ADEA. Accordingly, Plaintiff's participation in this investigation does not fall within either statute's purview. In her interview, Plaintiff indicates that she witnessed "harassment," exemplified by the May 7 meeting, the fact that Effinger "appeared dismissive of Ms. Walsh and appeared not to acknowledge her," and the September 18, 2019 encounter with Wilson. ECF No. 20-1, PageID.398. As explained above, these incidents do not amount to opposition activity under the ADEA and Title VII, as Plaintiff did not contest unlawful sex or age discrimination.[5]

Based on these findings, Defendant is correct that Plaintiff did not engage in opposition activity protected by the ADEA and, accordingly, cannot maintain an ADEA retaliation claim. The parties agree that Plaintiff's CHIP complaint implicates Title VII, but they dispute whether Wilson was aware of this complaint before seeking her termination.

### ii. Plaintiff cannot show that her CHIP complaint caused her termination.

Plaintiff cannot show that Wilson both knew of her protected activity and sought her termination because of it. She argues that "Ms. Davis and Mr. Effinger

---

[5] For these same reasons, there is also no evidence to show that Plaintiff reasonably believed at any time prior to filing her complaint that her treatment was based on her sex or age. *Bacon v. Honda of Am. Mfg., Inc.*, 192 F. App'x 337, 342 (6th Cir. 2006).

had received notice on October 1, 2019" that she filed her CHIP complaint, but she makes no such assertion about Wilson. ECF No. 20, PageID.379. The fact Davis and Effinger may have been aware of Plaintiff's CHIP complaint is not sufficiently persuasive, as there is no evidence that anyone other than Wilson assessed Plaintiff's performance or initiated the move to terminate her. *See* ECF No. 18-17, PageID.288; ECF No. 18-13, PageID.270; ECF No.18-14, PageID.275.

Further, the Court has already found that Plaintiff did not engage in protected activity until she filed her CHIP complaint on October 1, 2019. ECF No. 18-19, PageID.290. A week prior, Wilson had already drafted an email to Hervey contemplating his frustration with her work. *See* ECF No. 18-17, PageID.288 (September 24 email regarding Plaintiff's "lack of progress toward developing the necessary competencies required for this position"). So even though Plaintiff did not receive the final draft of this email until October 2, 2019, Wilson's concerns predated Plaintiff's complaint by at least a week and potentially longer. *See* ECF No. 18-21, PageID.300.

To support her causation argument, Plaintiff offers that her October 1, 2019 CHIP complaint and her termination on October 18, 2019 occurred very close in time. ECF No. 20, PageID.377, 383. Temporal proximity alone is not enough, as "successful plaintiffs typically pair temporal proximity with other indicia of retaliatory conduct." *Singleton v. PSA Airlines, Inc.*, No. 21-3423, 2022 U.S. App.

LEXIS 7777, at *9 (6th Cir. Mar. 24, 2022) (internal citation omitted). But in light of evidence showing that Defendant's reason for termination arose prior to Plaintiff's opposition activity, the evidence cuts in the other direction.

Plaintiff argues that she did not have time to remediate her alleged performance deficiencies in the roughly three weeks between her CHIP complaint and termination. ECF No. 20, PageID.383. But this bald assertion is not enough to show retaliation in light of Defendant's evidence that Plaintiff became uncooperative during that time. ECF No. 18-14, PageID.275–276 (Wilson complaining that Plaintiff, after being informed of her lack of progress, stopped communicating, deleted information from emails, spread negativity about supervisors to associates, and lied about accomplishing tasks). With no evidence that Wilson was aware of Plaintiff's discrimination claims at the time, this email is enough to show that the CHIP complaint did not motivate his decision.

Though Plaintiff has offered enough to make a prima facie case of discrimination, showing that she was potentially terminated based on age or gender, she offers nothing to demonstrate that her CHIP Complaint specifically motivated her ultimate dismissal. Accordingly, the Court finds that Plaintiff fails to raise a genuine issue of material fact regarding whether her protected activity caused her adverse employment action. Thus, Plaintiff fails to make a prima facie case of retaliation under Title VII or the ADEA.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART**. The Court grants summary judgment in favor of Defendant on Counts II and IV, unlawful retaliation on the basis of sex and age. The Court denies summary judgment on Counts I and III, Plaintiff's claims of intentional discrimination in violation of Title VII and the ADEA.

**IT IS SO ORDERED**.

Dated:  January 29, 2024                     /s/ Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             U.S. DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 29, 2024, by electronic and/or ordinary mail.
s/Lisa Bartlett
Case Manager